# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **J.B. HUNT TRANSPORT, INC.**, | : | CIVIL ACTION NO. 1:11-CV-1751 |
| Plaintiff | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | |
| **LIVERPOOL TRUCKING CO.,** | : | |
| **INC.** *et al.*, | : | |
| Defendants | : | |

## **MEMORANDUM**

Presently before the court are motions (Docs. 52, 54) to dismiss plaintiff's second amended complaint (Doc. 41) by defendants Shamsher Nagra d/b/a Liverpool Trucking Company, Shamsher Nagra in his individual capacity, and Fuel City Truck Stop, Inc., and the Magistrate Judge's report (Doc. 67) recommending that the motions be granted without prejudice. Neither party filed objections to the Magistrate Judge's report and recommendation ("R&R"). Instead, after the Magistrate Judge filed his R&R on April 5, 2013, plaintiff J.B. Hunt Transport, Inc. ("J.B. Hunt") filed the instant motion (Doc. 70) for leave to file a third amended complaint on April 22, 2013. For the reasons set forth below, the court will adopt the R&R but will deny J.B. Hunt's motion for leave.

## I. **Factual Background & Procedural History**[1]

J.B. Hunt filed a complaint in the instant action on September 20, 2011. (Doc. 1). It alleges that defendant Liverpool Trucking Company, Inc. ("Liverpool") breached an Outsource Carrier Agreement ("OCA") and Hold Harmless Covenant executed between

---

[1] The factual background set forth in this opinion derives in part from the Magistrate Judge's recitation of facts in his report, familiarity with which is presumed.

J.B. Hunt and Liverpool by failing to indemnify J.B. Hunt for a worker's compensation claim. On December 15, 2011, J.B. Hunt filed an amended complaint, adding a second worker's compensation claim for which it unsuccessfully sought indemnification from Liverpool. (Doc. 15).

On October 12, 2012, J.B. Hunt filed a second amended complaint adding as defendants Shamsher Nagra d/b/a Liverpool Trucking, Inc. ("Nagra d/b/a Liverpool"), Shamsher Nagra ("Nagra"), and Fuel City Truck Stop, Inc. ("Fuel City").[2] (Doc. 41). J.B. Hunt names these additional defendants, even though they are not party to the OCA, under several legal theories. J.B. Hunt attempts to pierce the corporate veil of Liverpool to implicate Nagra d/b/a Liverpool and Nagra. J.B. Hunt also alleges that Liverpool and Fuel City acted as a single entity even though they are two separate and distinct corporate entities. Alternatively, J.B. Hunt contends that Liverpool and Fuel City acted in a joint venture. In response, Nagra d/b/a Liverpool, Nagra, and Fuel City filed the instant motions (Docs. 52, 54) to dismiss under Federal Rule of Civil Procedure 12(b)(6).

The court referred the instant motions to Magistrate Judge Martin C. Carlson on December 17, 2012. (Doc. 55). On April 5, 2013, Magistrate Judge Carlson issued his report (Doc. 67) and recommended that the court grant the motions to dismiss for the moving defendants. The Magistrate Judge reasoned that J.B. Hunt's accusations "amount to nothing more than a recitation of the elements for the particular causes of

---

[2] Shamsher Nagra is the president and/or owner of Liverpool. (Doc. 41 ¶ 3). There is no registered entity of Shamsher Nagra d/b/a Liverpool Trucking Company, Inc. and there are no fictitious names listed in affiliation with Liverpool Trucking Company, Inc. (Doc. 67, at 2 n.1).

2

action he asserts." (Doc. 67, at 2-3). The Magistrate Judge further recommended that the charges in the second amended complaint relating to the moving defendants be dismissed without prejudice and that J.B. Hunt be granted leave to amend its complaint against those defendants if and when it is able to plead sufficient facts to support its conclusions of law. (Doc. 67, at 3).

Neither party filed objections to the R&R. Instead, J.B. Hunt filed a motion (Doc. 70) for leave to file a third amended complaint on April 22, 2013. In its proposed third amended complaint, J.B. Hunt includes approximately 20 new factual assertions in support of its claims against Nagra d/b/a Liverpool, Nagra, and Fuel City.[3] J.B. Hunt alleges that, on June 28, 2012, J.B. Hunt deposed Shamsher and his wife, Jasbir Nagra, who is the president or owner of Fuel City. (Doc. 70-6, Ex. F. ¶¶ 5, 25). According to the complaint, Mr. Nagra admitted that Liverpool does not comply with annual corporate filing requirements. (Id. ¶ 26). J.B. Hunt alleges that there are no annual corporate meetings or corporate minutes for Liverpool and the bylaws are not updated yearly. (Id. ¶¶ 27, 28). The Nagras purportedly own the building that Liverpool uses as its corporate office. (Id. ¶ 44). Liverpool allegedly does not pay rent for its use of the building. (Id. ¶ 45). According to the complaint, the personal assets of the Nagras are intermingled with the assets of Liverpool and Fuel City. (Id. ¶ 46).

---

[3] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present these new facts as alleged in the proposed third amended complaint.

3

The proposed complaint alleges that Liverpool and Fuel City operate out of the same location and that Liverpool's trucks are parked at this location. (Id. ¶¶ 30, 31). Drivers for Liverpool obtain and turn in all documentation at this joint location. (Id. ¶ 32). Liverpool purportedly uses a fax machine and computer at this joint location to conduct its business. (Id. ¶ 33). According to the complaint, Liverpool only leases trucks from Fuel City. (Id. ¶ 35). Fuel City leases the trucks and provides fuel to Liverpool at a discounted rate. (Id. ¶¶ 36, 37). Moreover, Jasbir Nagra allegedly signed the contracts at issue in the instant suit as a manager of Liverpool. (Id. ¶ 40). Jasbir Nagra also purportedly works for Liverpool by dispatching loads, communicating with business associates and drivers, and receiving electronic communications. (Id. ¶ 42).

Liverpool, Nagra d/b/a Liverpool, Nagra, and Fuel City filed briefs in opposition (Docs. 72, 73) to plaintiff's motion for leave on May 17, 2013. The defendants assert that amendment is futile because J.B. Hunt's proposed third amended complaint still fails to adequately state a claim upon which relief may be granted against Nagra d/b/a Liverpool, Nagra, and Fuel City. The matter is fully briefed and ripe for review and disposition.

## II. Discussion

### A. Magistrate Judge's Report and Recommendation

The court must first determine whether it should adopt the Magistrate Judge's R&R and grant the defendants' motions to dismiss without prejudice. When neither party files any objections to the R&R, the court must merely review the R&R for "clear error on the face of the record" before adoption. See Cruz v. Chater, 990 F. Supp. 375,

4

375-78 (M.D. Pa. 1998) (quoting FED. R. CIV. P. 72(b) advisory committee's note (1983)). The court does not find error on the face of the well-reasoned report and therefore adopts the R&R in its entirety. The court will grant the motions to dismiss without prejudice for J.B. Hunt to file for leave to amend its complaint.

### B. Motion for Leave to Amend

The court must now determine whether J.B. Hunt should be granted that leave based on its proposed third amended complaint.[4] After a party has amended its pleading once, it may only make additional amendments with the opposing party's written consent or the court's leave. FED. R. CIV. P. 15(a)(2). The court must freely grant leave to amend a pleading "when justice so requires." Id. The court has the discretion to deny a request to amend if "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 116 (3d Cir. 2003). Amendment is futile if the amended complaint cannot survive a motion to dismiss.

---

[4] In conducting this analysis, the court did not consider the deposition transcripts of Shamsher and Jasbir Nagra, which are attached to J.B. Hunt's motion for leave to amend and referenced in the proposed third amended complaint. (Doc. 70-6). Federal Rule of Civil Procedure 10(c) states that copies of "written instruments" attached to a pleading are a part of that pleading for all purposes. A "written instrument" consists of documentary evidence, such as "contracts, notes, and other 'writing[s] on which [a party's] action or defense is based.'" Rose v. Bartle, 871 F.2d 331, 339 n.3 (3d Cir. 1989) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1327, at 489). Exhibits solely containing evidentiary matter, such as depositions, are not considered "written instruments" under Rule 10(c) and are typically excluded from consideration of the pleadings. Id.; see also Copeland v. Aerisyn, LLC, Civ. A. No. 10-78, 2011 WL 2181497, at *1 (E.D. Tenn. June 3, 2011).

5

Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983). A complaint will not survive a motion to dismiss if, construing the facts in the light most favorable to the plaintiff, the plaintiff is not entitled to relief under any reasonable reading of the complaint. Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). The court will examine each of J.B. Hunt's legal and factual assertions against Nagra d/b/a Liverpool, Nagra, and Fuel City in turn.[5]

1.  *Piercing the Corporate Veil*

J.B. Hunt first attempts to "pierce the corporate veil" of Liverpool to implicate Nagra d/b/a Liverpool and Nagra in this action. To hold individual shareholders liable for the actions of a corporation, the court must first determine whether there are sufficient facts alleged to justify "piercing the corporate veil." Piercing the corporate veil is an equitable remedy that is appropriate only to "prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime." Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001) (quoting Zubik v. Zubik, 384 F.2d 267, 272 (3d Cir. 1967)). Pennsylvania courts

---

[5] The theories of piercing the corporate veil, single entity, and joint venture are not causes of action but instead are means of establishing liability for an underlying cause of action. See, *e.g.*, Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp., 643 F. Supp. 2d 675, 694 (E.D. Pa. 2009). In the complaint, J.B. Hunt sets forth its theories on piercing the corporate veil, single entity, and joint venture as separate "counts" following its counts for breach of contract and declaratory judgment, but names defendants Nagra d/b/a Liverpool and Nagra in its claims for breach of contract and declaratory judgment. Fuel City is only mentioned in the portions of the complaint concerning the single entity and joint venture theory, and it is not entirely clear whether J.B. Hunt also intended to name it as a defendant in its underlying breach of contract and declaratory judgment claims.

6

examine the following characteristics of the corporation to determine whether the court should pierce the corporate veil: (1) gross undercapitalization; (2) failure to observe corporate formalities; (3) intermingling of personal and corporate assets; and (4) use of the corporate form to commit fraud. E. Minerals & Chem. Co. v. Mahan, 225 F.3d 330, 333 n.6 (3d Cir. 2000) (quoting Lumax Indus., Inc. v. Aultman, 669 A.2d 893, 895 (Pa. 1995)).

J.B. Hunt asserts that the court should pierce Liverpool's corporate veil because it does not comply with annual corporate filing requirements, its assets are intermingled with the assets of the Nagras and Fuel City, and that Nagra caused Liverpool to be undercapitalized for its corporate purpose and activities. J.B. Hunt does not recite any facts remotely relating to Liverpool's alleged undercapitalization. Indeed, the proposed amended complaint does not include any facts whatsoever about Liverpool's financial status. J.B. Hunt states "upon information and belief" that there are commingled assets, but does not include any facts that would provide a reasonable basis for its "information and belief." See Shenango Inc. v. Am. Coal Sales Co., Civ. A. No. 06-149, 2007 WL 2310869, at *3 (W.D. Pa. Aug. 9, 2007) (granting a motion to dismiss where the complaint alleged various elements of the cause of action "on information and belief" but did not specify any facts that would have led to this conclusion). Liverpool's rent-free arrangement with the Nagras does not shed light on any of Liverpool's assets, intermingled or otherwise. Similarly, the fact that Fuel City and Liverpool shared office space and that Fuel City provided tractors and fuel to Liverpool at a discounted rate cannot provide the basis for J.B. Hunt's alleged "information and belief." See Preferred

Real Estate Inv., LLC v. Lucent Tech., Inc., Civ. A. No. 07-5374, 2009 WL 1748954, at *4 (D.N.J. June 19, 2009) (refusing to pierce the corporate veil when complainant alleged common ownership, common principal place of business, common email addresses, common corporate letterhead, and that the funds of principals of one company were used to make payments to the other company).

This leaves J.B. Hunt's allegations that Liverpool failed to observe corporate formalities. This lone assertion is not sufficient to subject Nagra d/b/a Liverpool and Nagra to liability. There is simply no indication that piercing the corporate veil in this instance would prevent any type of fraud, illegality, or injustice. J.B. Hunt's allegations concerning piercing the corporate veil would not survive a motion to dismiss.

2. *Single Entity*

J.B. Hunt attempts to pursue its claims against Fuel City under the "single entity" theory.[6] The "single entity" theory of piercing the corporate veil applies when "two or more corporations share common ownership and are, in reality, operating as a corporate combine." Miners, Inc. v. Alpine Equip. Corp., 722 A.2d 691, 695 (Pa. Super. Ct. 1998). To pierce the corporate veil under the single entity theory, J.B. Hunt must plead that, between Liverpool and Fuel City, there is: (1) unity of ownership; (2) unified administrative control; (3) similar or supplementary business functions; (4) involuntary creditors; and (5) insolvency of the corporation against which the claim lies. Id.

---

[6] Confusingly, J.B. Hunt also names Nagra d/b/a Liverpool and Nagra in its single entity count, but the allegations only concern Liverpool and Fuel City. (Doc. 70-6, Ex. F. ¶¶ 66-74).

8

Pennsylvania has never officially adopted the single entity theory as a method of piercing the corporate veil. Id.; see also Advanced Tel. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC, 846 A.2d 1264, 1278 (Pa. Super. Ct. 2004). Federal courts applying Pennsylvania law have split on whether to consider claims based upon the single entity theory. See Macready v. TCI Trans. Commodities, Civ. A. No. 00-4434, 2011 WL 4835829, at *7 (E.D. Pa. Oct. 12, 2011) (collecting cases). One case from this district's bankruptcy court determined that the Pennsylvania Supreme Court would likely adopt the "single entity" theory in instances where it would help "prevent fraud or injustice." *In re* LMcD, LLC, 405 B.R. 555, 565 (Bankr. M.D. Pa. 2009).

In the instant case, it is unnecessary to determine whether Pennsylvania courts would recognize the single entity theory because J.B. Hunt fails to adequately plead its essential elements. J.B. Hunt's allegations in this matter focus solely on evidence of Liverpool and Fuel City's unified administrative control and supplementary business functions. (Doc. 70-6, Ex. F. ¶¶ 30-42). The complaint does not provide any factual allegations for the other three elements. To establish the first prong of unity of ownership, the ownership of the two corporations must be identical. Miners, 722 A.2d at 695 (rejecting application of the single entity theory in part because the ownership of the two corporations was not identical). Here, J.B. Hunt alleges that Shamsher Nagra is the "president and/or owner" of Liverpool and that Jasbir Nagra is the "president/owner" of Fuel City, but it never alleges that Jasbir Nagra owns Liverpool or vice versa. (Doc. 70-6, Ex. F. ¶¶ 3, 5).

Further, there is no indication that Liverpool or Fuel City have any involuntary creditors. An involuntary creditor is someone who did not have the opportunity to rely on any information when becoming a creditor, such as a tort victim. LMcD, 405 B.R. at 566. The only known creditor of Liverpool, J.B. Hunt, is a voluntary creditor because it voluntarily entered into a contract with Liverpool and had the opportunity to analyze the possible risks of that contract. Lastly, J.B. Hunt provides no factual basis for its assertion that Liverpool "may likely be insolvent." (Doc. 70-6, Ex. F. ¶ 73). J.B. Hunt's "single entity" theory allegations would not survive a motion to dismiss.

3. *Joint Venture*

Alternatively, J.B. Hunt seeks to implicate Fuel City under the "joint venture" theory of liability.[7] To survive a motion to dismiss on this ground, J.B. Hunt must adequately plead the following elements: (1) that both Liverpool and Fuel City have made a contribution, such as capital, services, skills, knowledge, materials or money to the venture; (2) that Liverpool and Fuel City share profits; and (3) that Liverpool and Fuel City possess a "joint proprietary interest and right of mutual control" over the venture. Snellbaker v. Herrmann, 462 A.2d 713, 716 (Pa. Super. Ct. 1983).

In the case *sub judice*, J.B. Hunt alleges that Liverpool and Fuel City operate out of the same location. (Doc. 70-6, Ex. F. ¶¶ 30-33). According to the complaint, Liverpool

---

[7] J.B. Hunt's joint venture count also includes allegations against Shamsher Nagra and Jasbir Nagra. (Doc. 70-6, Ex. F. ¶¶ 75-78). However, Jasbir Nagra is not named as a defendant in this case. Moreover, there are no factual allegations specific to Shamsher Nagra that would implicate him under the joint venture theory.

10

only leases trucks from Fuel City. (Id. ¶ 35). Fuel City leases the trucks and provides fuel to Liverpool at a discounted rate. (Id. ¶¶ 36, 37). Based upon these scant allegations, it is unclear what "venture" J.B. Hunt alleges that Liverpool and Fuel City are allegedly contributing towards. The allegations concerning Jasbir Nagra's contributions to Liverpool's operations are irrelevant as they do not involve her company, Fuel City. Moreover, there are absolutely no factual allegations supporting J.B. Hunt's contention that Liverpool and Fuel City shared profits or possessed a joint proprietary interest and right of mutual control over any "venture." J.B. Hunt's proposed third amended complaint would not adequately establish the existence of a joint venture between the two defendants.

**III. Conclusion**

The Magistrate Judge recommended that the charges in the second amended complaint relating to the moving defendants be dismissed without prejudice with the understanding that J.B. Hunt could move for leave to amend its complaint when it is able to plead sufficient facts to support its conclusions of law. J.B. Hunt attempted to do so with its proposed third amended complaint, but the scant factual allegations therein do not show a "plausible claim for relief" against Nagra d/b/a Liverpool, Nagra, and Fuel City based on theories of piercing the corporate veil, single entity, or joint venture. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Even if J.B. Hunt is able to discover more facts and adequately amend these claims in the future, at this late stage, defendants will have strong

arguments for prejudice and undue delay. This litigation has been pending for nearly two years and is barely past the motion to dismiss phase. J.B. Hunt has now had three bites of the proverbial apple. It is time to move forward and resolve the claims against Liverpool – the original defendant.

For the foregoing reasons, the court will adopt the Magistrate Judge's report and recommendation (Doc. 67) that the motions (Docs. 52, 54) be dismissed without prejudice, but will deny J.B. Hunt's motion (Doc. 70) for leave to file a third amended complaint. An appropriate order follows.


      S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge


Dated:      June 24, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **J.B. HUNT TRANSPORT, INC.,** | : | **CIVIL ACTION NO. 1:11-CV-1751** |
| Plaintiff | : | |
| | : | **(Judge Conner)** |
| v. | : | |
| | : | |
| **LIVERPOOL TRUCKING CO.,** | : | |
| **INC.** *et al.*, | : | |
| Defendants | : | |

## ORDER

AND NOW, this 24th day of June, 2013, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The report and recommendation (Doc. 67) of Magistrate Judge Carlson are ADOPTED.

2. Defendants' motions (Docs. 52, 54) to dismiss plaintiff's second amended complaint (Doc. 41) is GRANTED without prejudice.

3. Plaintiff's motion (Doc. 70) for leave to file a third amended complaint is DENIED.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge